IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

KIMBERLY L. THOMPSON,

    Plaintiff,

       v.               CIVIL NO.: WDQ-14-3254

THE GOLDEN M COMPANY,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Kimberly L. Thompson sued The Golden M Company ("Golden M") for violations of state and federal anti-discrimination laws in the Circuit Court for Washington County. ECF No. 3. Golden M removed the suit to this Court. ECF No. 1. Pending is Golden M's motion to dismiss for failure to exhaust administrative remedies. ECF No. 8. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, Golden M's motion will be granted in part and denied in part.

I.   Background[1]

Golden M operates a McDonald's restaurant in Hagerstown, Maryland.  ECF No. 3 ¶ 1.  On February 3, 2012, Thompson, a single mother of six children, began working at the Hagerstown McDonald's.  *Id.* ¶ 2.

When Thompson was hired, she "informed the interviewer" that because she was breastfeeding her infant son, she would need to "express[] . . . excess milk at various times."  *Id.* ¶ 3.  On February 18, 2012, Thompson asked her supervisor, Michelle Wintermoyer, if she could take a break to express milk. *Id.* ¶ 4.  Wintermoyer refused, telling Thompson that she should have expressed during her lunch hour, and she would have to wait "until the rush hour was over."  *Id.*  The delay "resulted in severe pain to" Thompson.  *Id.*[2]  When Thompson asked to take

---

[1] The facts are from the complaint and EEOC filings attached to Golden M's motion and Thompson's opposition.  ECF Nos. 3, 8, 14. "Motions to dismiss for failure to exhaust administrative remedies are governed by Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction."  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) *aff'd*, 85 F. App'x 960 (4th Cir. 2004)(*citing Onuoha v. Grafton School*, 182 F.Supp.2d 473, 481 (D. Md. 2002)). To determine whether the Court has subject matter jurisdiction, it "may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue."  *Id.* (internal quotation marks and citation omitted).  However, the Court "must presume that factual allegations in the complaint are true and make all reasonable inferences in the plaintiff's favor."  *Id.*

[2] Thompson alleges that she was unable to express during her lunch break because she had nursed her son before starting work, just two hours earlier.  ECF No. 3 ¶ 5.

later lunch breaks to accommodate her need to express, she "was told that the breaks had to take place when [Golden M] said so." *Id.* ¶ 7.  However, other employees took frequent breaks "whenever they needed to do so."  *Id.*[3]

After Thompson started working for Golden M, her childcare provider told her that "she was unable to care for [Thompson's] children during the time that [Thompson] was working."  *Id.* ¶ 10.  Wintermoyer refused Thompson's subsequent request to change her schedule to accommodate her childcare provider's availability, "telling [Thompson] to get another childcare provider."  *Id.*  However, two male employees were granted schedule changes without having to file a written request.  *Id.* ¶ 11.[4]

On July 15, 2012, Golden M placed Thompson on probation for tardiness and absence.  *Id.* ¶ 13.[5]  On August 16, 2012, Golden M fired Thompson for "fail[ing] to show up for work without notice and for being repeatedly late."  *Id.* ¶ 14.  Male employees "were

---

[3] Golden M denied Thompson breaks to express milk throughout her employment.  *Id.* ¶ 9.

[4] One of the employees, Kaumba Simmons, began working for Golden M when Thompson did; the other, Marion Lewis, began working for Golden M the following month, in March 2012.  *Id.* ¶ 11.

[5] Thompson alleges that she called Golden M before she was late for work and provided a doctor's note for absences.  *Id.* ¶ 13.

not disciplined as harshly" or fired when they failed to notify
Golden M about absences and were frequently late. *Id*. ¶¶ 13-14.[6]

On November 15, 2012, Thompson completed an Equal
Employment Opportunity Commission ("EEOC") Intake Questionnaire
alleging sex and disability discrimination. *See* ECF No. 14-2.
As the allegedly discriminatory conduct, Thompson stated that,
on March 21, 2012, Wintermoyer had refused her request to work
the morning shift to accommodate "her daycare needs." *Id*. at 2.
Thompson attached an Answer Sheet to explain why she believed
Wintermoyer's conduct was discriminatory. *See id*. at 5-6.
Therein, Thompson described her unsuccessful efforts to change
her schedule despite submitting written "change of availability"
forms, and that male employees had been able to change their
schedules without submitting forms. *Id*. at 5.  Thompson further
stated that employees were not permitted to switch shifts with
her. *Id*.

Thompson also completed the section of the Intake
Questionnaire applicable to persons alleging disability
discrimination. *Id*. at 3.  Thompson stated that, on April 21,
2012, she had injured her right arm at work. *Id*. at 5.  After

---

[6] Thompson alleges that "[a]s a result of being subjected to a
hostile environment and terminated," she has "suffered severe
emotional distress, embarrassment, and humiliation," and lost
wages. *Id*. ¶¶ 15-17.  However, Thompson's opposition states
that "[t]here is no claim of a hostile work environment," but
rather sex and marital status discrimination. ECF No. 14 at 1.

4

initially receiving a splint, on May 3, 2012, her arm was placed
in a cast, and she was placed on light duty. *Id*.[7] Although she
returned to work, her hours were reduced. *Id.* at 5-6.

On February 25, 2013, Thompson signed an EEOC charge (the
"Charge") alleging sex--not disability--discrimination. ECF No.
14-1. The Charge alleged that, on March 21, 2012, Wintermoyer
had denied her request to work the "morning shift due to [her]
daycare needs," whereas male employees were permitted to work
the morning shift without submitting written requests. *Id.* It
further alleged that Wintermoyer "informed one of the staff
members that [Thompson] was not getting hours for a reason,"[8] and
Thompson had been discriminated against "with respect to
assignments." *Id.*

On July 19, 2013, Thompson prepared a Rebuttal to Golden
M's position statement, to which she attached four letters[9] from
her former co-workers describing her scheduling difficulties.

---

[7] Thompson stated that before her arm had been placed in a cast,
the general manager, Genny Resh, continually asked her when she
"was coming out of [the] splint . . . almost as if she didn't
believe anything was wrong." *Id.* at 6.

[8] Thompson alleged that she had not been informed of the reason.
ECF No. 14-1.

[9] One of the four letters was a sworn statement. ECF No. 14-3 at
7.

*See* ECF Nos. 14-3 at 1-6.[10]   Thompson's Rebuttal states that Resh
and Wintermoyer told her that she would need to express milk
during her lunch break and "they didn't have anywhere for [her]
to express."   *Id.* at 3.   It further states that on two
occasions, Wintermoyer and another supervisor, Michael Hudson,
denied her requests to express milk when she needed, and the
"countless times" she had to wait to express led to pain and an
infection called Mastitis.   *Id.*[11]

    On April 22, 2014, the EEOC issued Thompson a Dismissal and
Notice of Rights to Sue ("EEOC Notice").   ECF No. 14-4.   On May
5, 2014, Thompson sued Golden M in the Circuit Court for
Washington County for state law sex and marital status
discrimination.[12]   ECF No. 2.   On July 23, 2014, Thompson amended
her complaint to allege a federal sex and marital status

---

[10] Thompson contends that she had prepared the rebuttal "at [the]
EEOC's request."   ECF No. 14 at 2.   Golden M contends that it
never received Thompson's Rebuttal and has filed a Freedom of
Information Act ("FOIA") request to the EEOC for Thompson's
investigative file to see whether the Rebuttal had been
submitted; however, the EEOC has not responded to the FOIA
request.   ECF No. 18 at 5 n.2.

[11] Thompson's rebuttal also describes her unsuccessful efforts to
transfer to a different location.   ECF No. 14-3 at 5.

[12] *See* Md. Code Ann., State Gov't § 20-601, *et seq.* (West 2010).
In Maryland, employers may not "fail or refuse to hire,
discharge, or otherwise discriminate against any individual" on
the basis of "race, color, religion, sex, age, national origin,
marital status, sexual orientation, gender identity, genetic
information, or disability."   State Gov't § 20-606(a).

discrimination claim.  ECF No. 3.[13]  On October 16, 2014, Golden
M removed the suit to this Court.  ECF No. 1.[14]

On October 23, 2014, Golden M moved to dismiss the amended
complaint.  ECF No. 8.  On November 13, 2014, Thompson opposed
the motion.  ECF No. 14.  On December 4, 2014, Golden M replied.
ECF No. 18.

II.  Analysis

A.  Legal Standard

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an
action if it discovers it lacks subject matter jurisdiction.
The plaintiff has the burden of proving the Court has
jurisdiction, and the Court must make all reasonable inferences
in the plaintiff's favor.  *Khoury v. Meserve*, 268 F. Supp. 2d

---

[13] *See* 42 U.S.C. § 2000e, et seq. (2012).  Under federal law,
employers may not discriminate on the basis of race, color,
religion, sex, or national origin.  *Id*. § 2000e-2(a).  Unlike
Maryland law, federal law does not recognize marital status as a
basis of discrimination.

[14] On September 23, 2014, Golden M was served with the amended
complaint.  *Id*. ¶ 3.  This Court has jurisdiction over the
federal claim under 28 U.S.C. § 1331, which provides that "[t]he
district courts shall have original jurisdiction of all civil
actions arising under the Constitution, laws, or treaties of the
United States."  This Court has jurisdiction over non-federal
claims under section 1367, which provides, *inter alia*, that "in
any civil action of which the district courts have original
jurisdiction, the district courts shall have supplemental
jurisdiction over all other claims that are so related to claims
in the action within such original jurisdiction that they form
part of the same case or controversy under Article III of the
United States Constitution."

600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).
The Court may "look beyond the pleadings" to decide whether it
has subject matter jurisdiction, but it must presume that the
factual allegations in the complaint are true. *Id.*

    B.   Administrative Exhaustion

    Federal and Maryland state discrimination claims are
subject to administrative exhaustion. *See* 42 U.S.C. §§ 2000ff-
6(a)(1), 2000e-5(e)(1); Md. Code Ann., State Gov't § 20-1013(a);
*Kobraei v. Alexander*, 521 F. App'x 117, 118 (4th Cir. 2013)
(unpublished) (per curiam) (*citing Chacko v. Patuxent Inst.*, 429
F.3d 505, 513 (4th Cir. 2005)); *Cuffee v. Verizon Commc'ns,
Inc.*, 755 F. Supp. 2d 672, 678 (D. Md. 2010). A plaintiff
exhausts her administrative remedies by filing an EEOC charge
and obtaining a "right-to-sue" letter; failure to do so
"deprives the federal courts of subject matter jurisdiction over
the claim." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th
Cir. 2009); *Davis v. N. Carolina Dep't of Correction*, 48 F.3d
134, 140 (4th Cir. 1995).

    Administrative exhaustion is "intended . . . to serve the
primary purposes of notice and conciliation." *Chacko*, 429 F.3d
at 510. It gives employers the "opportunity to voluntarily and
independently investigate and resolve the alleged discriminatory
actions," thus preventing "later complaining of prejudice, since
[the employer] has known of the allegations from the very

beginning," and "initiates agency-monitored settlement," which is how most discrimination claims are resolved.  *Id.*

Accordingly, a complaint filed in court may raise "claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).  The same standard applies to administrative exhaustion under Maryland law. *See Cuffee*, 755 F. Supp. 2d at 678; *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 914 A.2d 735, 742 n.8 (Md. 2007) (Title 20 is the state law analog to Title VII).

Golden M asserts that Thompson failed to exhaust her administrative remedies in connection with several allegations in the amended complaint that are unrelated to the discriminatory scheduling alleged in the Charge, and she impermissibly added "marital status" as a new theory of discrimination.  ECF No. 8-1 at 7-8.  Golden M contends that Thompson's Charge failed to allege harassment, inability to take breaks to express breast milk, and discriminatory application of tardiness rules and termination.  *Id.* at 7.

Thompson contends that the EEOC should have amended her Charge to include facts alleged in the Rebuttal, and that she

had been unaware "that she could, or should[,] amend [the Charge]."  ECF No. 14 at 4, 5-6.[15]

The EEOC permits amendments "to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein."  29 C.F.R. § 1601.12(b). "Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received."  *Id.*

The Rebuttal is addressed to the EEOC and appears to respond to Golden M's position statement; thus, it is reasonable to infer that Thompson sent the Rebuttal to the EEOC.  *See Khoury*, 268 F. Supp. 2d at 606.  However, Thompson has not shown that the EEOC received the letter.  *See Ngatia v. Dep't of Pub. Safety & Corr. Servs.*, No. CIV. WDQ-14-0899, 2015 WL 996585, at *8 (D. Md. Mar. 4, 2015)(declining to infer that the EEOC received a letter requesting "an updated charge" when the plaintiff never received an updated charge).  Further, there is no evidence that Thompson asked the EEOC to amend the Charge to include the discriminatory conduct alleged in the Rebuttal, or

---

[15] Thompson further contends that "[t]he reference to the employer's failure to accommodate [her] daycare needs as a mother," and her allegation of sex discrimination, are "reasonably related to the original Charge."  ECF No. 14 at 4. However, Golden M has not disputed that Thompson's Charge alleged scheduling-related sex discrimination.   ECF No. 8-1 at 7.

10

that it declined to do so.  *Cf. Hicks v. ABT Associates, Inc.*,
572 F.2d 960, 962-63 (3d Cir. 1978)(right to sue was not
defeated when plaintiff testified that the EEOC had refused to
accept an amendment).  Although "Title VII does not require
procedural *exactness* from lay complainants,"[16] Thompson's *pro se*
status when she filed the EEOC Charge does not excuse her
failure to amend the Charge.[17]   Thus, the Court must decide

---

[16] *Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll.*, 848
F.2d 457, 460 (4th Cir. 1988)(emphasis added)(naming a community
college in an EEOC Charge did not bar suit against the board of
directors).

[17] *See Blake v. Ross*, No. 13-7279, 2015 WL 2405241, at *7 (4th
Cir. May 21, 2015)("[An inmate]'s alleged ignorance of the
exhaustion requirement, or the fact that he might have
misconstrued the language in the handbook, does not excuse his
failure to exhaust.")(*quoting Gonzalez v. Crawford*, 419 F. App'x
522, 523 (5th Cir. 2011)).  The opposite outcome would result in
rebuttals becoming *de facto* amendments for the purpose of
subsequent litigation, routing Congress's intent that
administrative exhaustion notify employers about alleged
discrimination and provide an opportunity for conciliation.
*Chacko*, 429 F.3d at 510.

Thompson argues that the EEOC's failure to amend the Charge "is
not fatal" because "[a]n adverse employment action against a
woman because she was lactating or expressing milk violates
Title VII."  ECF No. 14 at 4(*citing E.E.O.C. v. Houston Funding
II, Ltd.*, 717 F.3d 425, 428 (5th Cir. 2013)).  However, the
issue here is not whether an adverse employment action based on
expressing milk states a cognizable Title VII claim, but whether
Thompson exhausted her administrative remedies in connection
with her need to express milk.

Thompson further argues that the Court should apply equitable
tolling to avoid dismissing her suit for failure to exhaust.
ECF No. 14 at 6-7.  Equitable tolling is a narrow, discretionary
doctrine, typically applied when "the plaintiffs were prevented
from asserting their claims by some kind of wrongful conduct on

whether the factual allegations in Thompson's amended complaint are "reasonably related" to the allegations in the EEOC Charge or would have been "developed by reasonable investigation of the original complaint." *Evans*, 80 F.3d at 963.

The Fourth Circuit has provided guidance in this area.  In *Chacko*, the plaintiff's administrative charges alleged that his supervisors discriminated against him on the basis of sex and national origin, hostile treatment by supervisors, and retaliation, 429 F.3d at 507.  The plaintiff's complaint, however, alleged that his coworkers--not his supervisors-- "hurled a barrage of national-origin insults and epithets at him" throughout his 20-year career.  *Id*. at 508.  The Fourth Circuit held that the plaintiff had failed to exhaust his administrative remedies because "[t]he administrative charges .

---

the part of the defendant" or when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time."  *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)(*quoting Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)).  Although it is unclear, Thompson appears to argue that the Court should apply equitable tolling because Thompson's failure to timely amend her Charge resulted from "the EEOC['s] fail[ure] to fulfill its statutory duty."  ECF No. 14 at 6.  However, Thompson has not pointed to any extraordinary circumstances that prevented her from including the conduct alleged in her Rebuttal in the Charge or seeking to amend the Charge, nor has she explained how the EEOC purportedly failed to fulfill its statutory duty.  Under these circumstances, equitable tolling is not appropriate.  *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004)(*pro se* status and ignorance of the law does not justify equitable tolling).

12

. . dealt with different time frames, actors, and conduct than the central evidence at trial." *Id.* at 511.[18]

On the other hand, the Fourth Circuit has found exhaustion when the EEOC charge and the judicial complaint allege the same theory of discrimination, and the facts alleged in the charge--though different from those in the complaint--"are nonetheless sufficient to afford adequate notice to the employer of the factual basis for the claim." *Coles v. Carilion Clinic*, 894 F. Supp. 2d 783, 790 (W.D. Va. 2012). For example, the Fourth Circuit has found exhaustion when the administrative charge and judicial complaint alleged that an employer "discriminated in promotions" but addressed different aspects of the "promotional system," *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981), or when the charge and complaint alleged disability discrimination but involved the denial of different types of accommodations, *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012).

Unfortunately for Thompson, her suit is more like *Chacko* than *Chisholm* or *Sydnor*. Thompson's claims--continuous denial of breaks to express milk and discriminatory application of

---

[18] The Court noted that the charges (1) alleged "three specific acts at specific times," whereas the complaint alleged "long-term harassment"; (2) failed to mention coworker harassment; and (3) alleged "specific confrontations" that did not "involve[e] name calling" or "national-origin epithets." *Chacko*, 429 F.3d at 511-12.

tardiness rules and termination--are considerably different from the one instance of discrimination alleged in her Charge-- Wintermoyer's March 21, 2012 denial of a scheduling change.  Nor would a reasonable investigation of that incident necessarily uncover Thompson's additional claims.  *See Chacko*, 429 F.3d at 506 ("[A] Plaintiff fails to exhaust his administrative remedies where, ... his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit."); *see also Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)(racially discriminatory hiring, training, and promotion claims barred when EEOC charge only alleged discriminatory disciplining).[19]

Thompson has, however, exhausted her administrative remedies with respect to discriminatory scheduling.  The Court disagrees with Golden M's assertion that dismissal of the entire amended complaint is merited because Thompson's scheduling-related claim "cannot be meaningfully separated from either

---

[19] *Cf. Lawson v. Burlington Industries, Inc.*, 683 F.2d 862 (4th Cir. 1982)(barring failure to rehire claim when EEOC charge alleged illegal layoff); *Jones v. Republic Servs., Inc.*, No. AW-10-CV-1999, 2011 WL 6000761, at *3 (D. Md. Nov. 29, 2011) (discriminatory suspension and termination claims barred when EEOC charge alleged denial of an alternative work schedule).

count." ECF No. 8-1 at 9. The allegations regarding scheduling are readily identifiable; thus, that claim may proceed.[20]

II. Conclusion

For the reasons stated above, Golden M's motion will be granted in part and denied in part.

_____6/22/15_____                    _____
Date                                 William D. Quarles, Jr.
                                     United States District Judge

---

[20] Thompson has not addressed Golden M's argument that she impermissibly added marital status as a new theory of discrimination. The Fourth Circuit has repeatedly found failure to exhaust administrative remedies when the charge and complaint allege different types of discrimination. *See, e.g.*, *Evans*, 80 F.3d at 963 (age discrimination claim barred when EEOC Charge alleged sex discrimination); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132-33 (4th Cir. 2002)(sex discrimination claim barred when EEOC Charge alleged racial discrimination). Further, Title VII does not recognize discrimination on the basis of marital status. *See supra* note 13. Thompson's Charge never alleged that she was a single mother, or that she was treated differently from married persons; rather, she alleged that she was treated differently from male employees. *See* ECF No. 14-1 at 1, 5. Accordingly, Golden M's motion will be granted as to Thompson's claims of discrimination on the basis of marital status.